Good morning, Steve Hormel for Mr. Gallaher. Your Honor, this appeal addresses one issue regarding the Congress's enactment of 18 U.S.C. 3598 and the impact it has on whether or not first-degree murder that occurs from a Native American reservation continues to be a capital offense or is now a capital offense with Congress's elimination of the death penalty through its enactment of 3598. And, Your Honors, this morning when I was trying to figure out the best way to approach this issue with the court, it dawned on me that there's a series of cases out of the United States, out of the Fifth Circuit, that I think the court should be aware of. And I spoke to Mr. Harrington yesterday and also to him this morning and asked if he had any problem with me giving this case to the court, even though I didn't submit a letter brief or earlier submit it. And I learned about this case in December and looked it over. It's United States v. Seale. And the Supreme Court... Seale as in S-E-A-L? S-E-A-L-E, sorry, excuse me, Your Honor. And there's a published, I wouldn't call it an opinion, but a publishment by Justice Scalia and Justice Stevens disagreeing with the Supreme Court not taking certification of a very similar issue as involved here. And that would be at 130 Supreme Court 12 and that was issued in November of 2009. And that emanates from a decision by a panel of the Fifth Circuit in 542 Fed 3rd 1033 that was published in 2008. What happened thereafter is the Fifth Circuit was looking at a very similar issue that was in the Provenzano, in fact an identical issue that was addressed in Provenzano, which is a case that both the government and I relied on heavily under 18 U.S.C. 12 or 12001. The panel found that Congress's elimination of the death penalty in 1201 prevented the government from then, or established a five-year statute of limitations as opposed to a lifetime statute of limitations. And that decision is at 542 Fed 3rd 1033. What happened after that, the panel made the decision, is the Fifth Circuit. That's why 28J letters are a lot more helpful. You're using up all your time giving the citations. I'll just, I don't have the page site, but the other cases that are relevant are 570 Fed 3rd 650. All right. Why don't you just submit a letter afterward and not use up the time? But in short, what are, these cases are like the cases where Kim Napping was eliminated. Yes, and that's going to be the, I think this case boils down to an issue that is very identical to the Congress's elimination of the death penalty in 1201. Well, it isn't exactly. It's really a question of whether you read the, the statute says an indictment for any offense punishable by death. Now, in the cases you're talking about, this offense was not punishable by death anywhere in the United States Code, right, the Kim Napping, any more, right? Yes, it is. No, no. 1201 is now punishable by death enacted in 18 U.S.C. 1201 is now punishable by death as of 1994. What is? Kidnapping. That results in death. But I thought the, the issue in that case was that the kidnappings at issue. That's why I think, that's why I think these seal cases are important in the history behind them. And I didn't, like I said, it didn't dawn on me until this morning is, is, is that what you have is in 1964 when the, or 61 when this, when, when in Provenzano the, the defendant was, committed the offenses, death penalty was, was in the statute. In 1972, Congress eliminated the death penalty in the statute. In 1994, Congress then again, re-invoked the death penalty in the Federal Death Penalty Act, the same act that eliminated the death penalty. But only if it resulted in death. What's that? But only if the kidnapping resulted in death. Resulted in death, correct. And so what's, I mean, it's impossible to talk about a case that we don't have. So, and seal, what, what, did the kidnapping result in death? What's that? In seal, did the kidnapping result in death? Yes. So, what was it? Wait a minute. Yes, it did. Yes, it did. All right. So, then it was an offense punishable by death. But the offenses occurred back in 1964. So, that's why the issue is right. I mean, in front of the Fifth Circuit. And, and that, and the, and that's why the two justices disagreed. All right. Well, to get away from those cases that we haven't read into, what are they saying? I will. Because in this case, what you have is, you do have the fact that Congress did not eliminate in the enabling statute, 1111, the, the provision for death. So, that's, that's a given. And, and the government correctly points out that when Congress enacted 3598, that they were not considering the seriousness of the offense of, of murder when they, when they eliminated it in 3598. And the other thing that's a given is that Congress then delegated the authority of the in the, in the tribal court. So, the, the decision, I think, that this court, that boils down to is, was the enactment of 3598 an elimination of the death penalty for murders that occurred on tribal lands? And it, and it is. It's an absolute elimination. Because what the statute says is, notwithstanding 1153, and 1153 is the mechanism which allows the federal government to prosecute murders on Indian reservations, notwithstanding the provisions of 1153, you can no longer sentence a person, shall not, you shall not impose a death sentence on any person who commits any offense in, where jurisdiction relies on Indian country. So, so there's no, I mean, to me, the, the two, there are two possible readings, again, of the, of the, just to take a plain words reading of the statute. In one sense, this is not punishable by death. I mean, it isn't punishable by death, literally speaking, because you cannot put the guy to death, right? Right. So on that ground, this doesn't apply, unless you think that an offense punishable by death is a description of an offense as it appears in the United States Code, whether or not the person himself is actually punishable by death. That's the analysis you use, Your Honor, though, when, when a court finds the, a statute unconstitutional like it did in Furman and like it did in Jackson, the analysis you take when a court finds the death penalty unconstitutional is completely different than the analysis the court has to run through when Congress takes some action. And that's the, that's the language that Provenzano, this District Court in Provenzano use. It's different when the Congress has taken some action on the matter. In this case, Congress did take some action on the matter. And the, the government and the District Court were relying on the fact that the tribes can still elect to have the death penalty, therefore, it's, death penalty is a possibility, and so it's still a capital offense. Well, that's no different, and this is why I think the Seale case is important and it didn't dawn on me until this morning. The Congress, by having delegated the power to the tribes to reenact the death penalty, is no different than what the power the Congress has. Back in the 60s, 12,001 was death penalty eligible. In 72, it was eliminated. In 94, it was reenacted. That's exactly what Congress gave the Native Americans in this country the power to do, was to reenact the death penalty. Now, at the time, just one question. At the time Mr. Gallagher committed this crime, if the death penalty did apply? Yes. Was in, yes, did apply. And, but no one seems to, everybody seems to be in agreement here that the relevant law is a law in effect at the time of the conviction, not the time of the crime. That's correct. As to whether the death penalty applies. Yes. I believe that's true. Because we're dealing It's not, it's not self-evident that that should be true. No, but We have cases that say that. I think that the Bridges case and the Obermeyer case out of the Second Circuit, the Bridges case out of the Supreme Court, and also Provenzano make it clear, even the Seale case that I mentioned, talks about it. Since the statute of limitations is a procedural remedy as opposed to substantive, then, and that's the issue that we're talking about, is what statute of limitations applies, then the Savings Clause in 18 U.S.C. 109 does not apply to this. So it would, so the Savings Clause will not save this as a capital offense, so to speak, because the statute of limitations is procedural. All right. Do you want to save some time for our final? Yes. Thank you. Good morning. May it please the Court. My name is Joe Harrington. I'm an assistant U.S. District of Washington. That's Spokane. I'd like to just highlight a few propositions that I don't think are really in contest in this matter. First, that the crime of first degree murder in violation of 18 U.S.C. Section 1111 is punishable by death or imprisonment for life. Second, unlike the kidnapping statute under 18 U.S.C. Section 1201, which was addressed in the Seale case that was referred to the Court today, as well as the Provisional case cited in the briefs, Congress has made no substantive changes to 18 U.S.C. 1111, the first degree murder statute, or its penalty provisions at any time during the relevant time period of this case. They did. They said that they made the most relevant one, which is they said that it doesn't apply in Indian country unless the Indian tribe legislates it in. Respectfully, Your Honor, Congress has made no changes to 18 U.S.C. Section 1111, which is the first degree murder statute. All right. Sorry. It's sitting there. But it certainly changed its impact as relevant to this case. Well, Your Honor, I would submit respectfully that in line with this Court's case of U.S. v. Manning, cited in the briefs, it's 56 F. 3rd, 1188, this Court has recognized that the statute of limitations period, which is really at the heart of this case, under Section 3281 and 3282, and I'm quoting from the Court, are inextricably tied to the nature of the offense. Congress has made the judgment that some crimes are so serious that an offender should always be punished if caught. And I would submit that murder is one such offense. So I think when you're analyzing whether — When you were saying that Congress, within the first degree murder statute, has not affected the penalty, that's true. It has made the judgment, however, that if it's up to the Congress's judgment about the nature of the heinousness and the danger and threat to society of first degree murder, but it is delegating to the tribes the choice as to whether to exact the death penalty. And if I understand the Court's comment correctly, that's — I would agree — is that the 1994 Federal Death Penalty Act, under 18 U.S.C. 3598, allows for — those tribal governments within Indian country to opt in to the federal death penalty or not. So taking your logic, which is that they're undermining, they're inextricably intertwined, why wouldn't the logic then be that along with the Congress's delegation to the tribes, the same would apply to the intertwined statute of limitations? That if they don't have the death penalty, they also don't have the — anything other than the five-year statute of limitations. I would respectfully submit that the 3598 Federal Death Penalty Act — I think that if you look at the plain reading of the statute, the statute itself allows for the imposition of the death penalty, albeit in a discretionary fashion. So that the imposition of the death penalty is available if a tribe so chooses to opt in. But essentially what it's saying, what that statute is saying, is we are not the legislative body for this. We're going to let the tribes do it. It's as if — you had a very odd footnote in your brief about — with an analogy to state law, which what happens if there's concurrent state jurisdiction. My understanding of what happens if there's concurrent state jurisdiction is that the tribes have the right to impose the death penalty. But that's not true with regard to the tribes. In other words, there's — states can either impose the death penalty or not with regard to their own law. But with regard to the tribes, it's — it's whether the federal law is going to yield a death penalty or not on — in the territory of the tribe is up to the tribe. Your Honor, the — looking back at the legislative history of the Act, there was no mention in the legislative history of any categorical elimination of the death penalty. Rather, the thrust of the legislative history was to recognize tribal governments' autonomy. Exactly. So you're eliminating a death penalty on the — on this land unless the tribes, as the governing bodies, enact it. It was — respectfully, Your Honor, the death penalty was never eliminated. It was — it's out there. If the tribal governments want to opt in, they can. Tell me how your — I'm concerned about the statutory plain words here, okay? And how you would read a sentence that says an indictment for any offense punishable by death applies to an offense that is, in fact, under the United States Code, not punishable by death. I understand you're saying it is punishable, but in fact, it isn't punishable by death because the contingency hasn't happened. So this offense is not punishable by death. It's defined — the crime itself under 18 U.S.C. 1111 is defined as punishable by death. And the substantive crime, first-degree murder, is punishable by death. And so — but it's not regarding it as a description because it is still sitting in the United States Code as punishable by death. It's really a reference to what's in the United States description of the offense with that regard to what's actually happening. I think it's a shorthand — it's a shorthand method of saying, under the statute of limitations, it's those graven, serious offenses that should be subject to the unlimited statute of limitations. But what's interesting is that the other statute uses the term noncapital. And if it said capital offense, then it would be, you know, somewhat clearer, it seems to me, that that is a description of the kind of offense. But this doesn't say that. It says punishable by death. That's correct, Your Honor. The two statute of limitations statutes, 3281 refers to death or imprisonment for life, and 3282 refers to those crimes that are not capital. So they didn't use the same language. I guess, accepting, if we lead down to the conclusion that the defense counsel would like this court to reach, I guess the unseemly result would be that if you had a first-degree homicide, first-degree murder, premeditated, that occurred just inside an Indian reservation or inside Indian country, and you compared that to just as a heinous and just as difficult or just as serious of a first-degree murder occurring just outside — Well, it could happen in California. You could have the Cabazon tribe and the Agua Caliente tribe with their reservations adjoining, and one may have opted in and one may have opted out. So what's the point? Well, I think the point is that the description of when and which statute of limitation applies with respect to both of those serious crimes, I'm not talking about the penalty provision. Well, yeah, but you already have a major — I think this is what Judge Fischer is saying. You already have this major anomaly. The guy commits the crime in one place, he's going to be dead. In the other place, he's not going to be dead. That's a rather major anomaly. Well, what's the difference between just, you know, across the boundary between Washington and Oregon? Well, it's — and, again — Same thing, isn't it? It's not about — the point is not about what punishment — what the punishment should — No, but they had different statute of limitations, Oregon and Washington. So, I mean, what are you getting at? Well, the statute — I mean, that's the nature of, you know, the separate jurisdictions. Well — I mean, you're just, you know, denigrating Indian sovereignty. That's what you're doing. Well, respectfully, Your Honor, I'm just trying to make the point that the statute of limitations, if you assume that first-degree premeditated murder that occurs on Indian country will have a five-year statute of limitations while a first-degree premeditated murder that occurs just outside the Indian reservation will have an unbounded, unlimited statute of limitation, seems to be somewhat, I guess respectfully, contrary to public policy. It seems to me that this Court has recognized that there are those crimes that are so grave and so serious that they should be subjected to an unbounded statute of limitations. And I think that's why the Federal Death Penalty Act under Section 3598 should be interpreted that way, that, in fact, the death penalty was not limited. It was merely discretionary, and that — Well, if I don't see that as a viable way to reach a result, is there another way to reach a result? Well, I would submit, Your Honor, that the statute of limitation provision under 3281 is merely describing those types of crimes that are punishable by death, and it's a shorthand method to describe grave and serious offenses like first-degree premeditated murder. Well, that can't be right. It has to be referring to some objective place in which this is punishable by death. In other words, if, in fact, the — well, to take the kidnapping example, once the United States Code eliminated kidnapping as punishable by death, all the case law agrees that you cannot then stick it in here because you're saying it's serious. Your Honor, I'm out of time. May I respond? Please respond. Thank you. The difference between the instance we're dealing with here and the kidnapping statute is Congress actually made — they actually took action and amended the substantive crime of kidnapping, 1201. They — Congress actually went in during — in the wake of Furman and Jackson, where the question about the Eighth Amendment application, the federal death penalty, came up. Congress actually went into the substantive statute, 1201, and amended it. I understand that, but — All right. Thank you. You're out of overtime, but that's fine. It's an important case. I kind of disagree with that last statement because I think Congress did. The 18 U.S.C. 1153 is the murder statute for murders that occur on Native American that adopts the federal law under 1111. So Congress did eliminate murders that occur on Native American. It didn't eliminate. It suspended it at the option of the tribes to impose it or not. It — Well, it didn't say it's a non-capital crime. It just simply said it's a capital crime with death penalty, but we will respect Indian sovereignty to accept out of — to not have us impose death penalty on reservations. It's up to it. That's the second point. So it's the delegation issue. Yeah, it's the second point that I want to make, Your Honor, is that Judge Brezon and Mr. Harrington talked about the contingencies in enacting — reenacting the penalty, the death penalty. The tribe has the same contingency Congress has. Congress can impose the death penalty on any statute that is non-death penalty eligible right now. I mean, obviously, it's got to depend on the serious nature. Same with the tribe has that ability right now. So I believe that the practical effect of 3598 is an elimination of the death penalty. My question is, does the tribe — I have a question. Excuse me. Does the tribe, as you read the statute, have the authority to impose the unlimited statute of limitation if it imposes the death penalty? Probably not because it doesn't — it only has the authority to impose the death penalty provision chapter or not the death penalty chapter, and the statute is not in it. That's correct, Your Honor, but I think that's where you get to the analysis that Congress in making some — unless it saved the procedural statutes that go with it, also eliminated those procedural statutes. That's where the cases with Provenzano and the rest, I think, come down. Thank you. All right. Thank you. Thank you, counsel, both. I appreciate the argument. Gallagher is submitted.
judges: Tashima, Fisher, Berzon